EBER JOHNSON v. TOWN OF BOLTON.

*Soldier's Bounty. Authentication. " Official." Evidence. Vote. Selectmen. Towns.*

The word "official" attached to a paper and signed by a proper officer of the Adjutant and Inspector General's office, does not verify it as a true copy or original document.
The testimony of a witness that he heard a letter read purporting to come from one of the selectmen of the defendant town, is not admissible as evidence that such letter was written by such selectman.
A vote "That the selectmen be and they are hereby *authorized* to pay a bounty not exceeding $300, to each volunteer," &c., is not a general offer of such bounty; but requires the intervention of the selectmen to bind the town.

ASSUMPSIT, to recover a town bounty.  Plea, the general issue and payment.  Trial by jury, April term, 1870, PIERPOINT, C. J., presiding.  Verdict for the plaintiff.  The defendants excepted to the ruling of the county court in admitting certain papers purporting to have emanated from the Adjutant and Inspector General's office, and certain evidence, against the defendants' objection, and also excepted to the charge of the court, all of which is stated, with the other facts in the case, in the opinion of the court.

*E. R. Hard,* for the defendants.

*Henry Ballard* and *H. H. Talcott,* for the plaintiff.

The opinion of the court was delivered by

REDFIELD, J.   The plaintiff seeks in this case to recover a bounty of three hundred dollars of the defendant for his military service in the armies of the United States ; and his claim is predicated upon the vote and resolution of the defendant town under date of December 7th, 1863.

The resolution is as follows :   " Resolved that the selectmen be and they are hereby authorized to pay a bounty not exceeding $300.00 to each volunteer, who shall be mustered into the United States service before January 5th, 1864, and applied on the quota of this town, to be raised under the last call of the President of the United States for volunteers."

The exceptions show that the plaintiff " re-enlisted in the field for the term of three years, and was on the 16th day of December, 1863, mustered into the federal service, to the credit of the town of Bolton." That previous to such re-enlistment the plaintiff and his associates understood that the town of Bolton was paying a town bounty of $300, to each man who should enlist and be credited to the town on its quota under the call of October, 1863, for 300,000 men; and that he re-enlisted and caused himself to be mustered in, to the credit of that town, relying on such information, and expecting to receive such bounty from the town; and that he was among the first to be applied on the quota of said town.

The plaintiff offered in evidence " General Order No. 1 " and " General Order No. 2," purporting to come from the Adjutant and Inspector General's Office, dated respectively October 28 and November 2d, 1863. At the bottom of these papers was written " Official, Jas. S. Peck, Asst. Adjt. & Ins. Gen'l."

I. We do not think these documents were verified or authenticated by such certificate as *true copies* or *true extracts* from the records and files of that office.

We know of no rule of civil procedure, either statutory or otherwise, that would accept such certificate as the proper and legal verification and authentication of such documents. It does not appear whether the documents are original or copies; or whether *true*, if either. We are aware that in military life, when the honor of the soldier is the guaranty of fidelity and truth, such certificate is usual and implies that the document is genuine and comes from the proper authority. But in courts of justice nothing is received but what is *proved*, and by *sworn testimony*. An exception has been made that *copies* of *record* and certain documents may be proved by the *official certificate* that *they are true copies*. And though as these documents came from an " honorable man," we may be satisfied that they are *true*, yet there is no *legal evidence* that they are *original* or *true* copies; and their admission, against the objection of the defendant, was error.

II. The court permitted the plaintiff and another witness, against the objection of the defendant, to testify that immediately

preceding their re-enlistment, one Jackman read to them a letter, which Jackman said he had received from Church, one of the selectmen of Bolton, which stated that the selectmen of Bolton were paying $300 bounty for soldiers to fill the quota of said town; that they would do as well in the way of bounties as any other town; and urged re-enlistments to the credit of said town : they having first testified that Jackman was killed in the battle of the Wilderness, and adduced other satisfactory proof that such letter was lost. Neither witness professed to have any knowledge of the handwriting of Church, and, themselves, could neither read nor write. Church distinctly denies that he wrote such letter, and it is not claimed that there was any other evidence that such letter was written.

It is obvious, we think, that the testimony had no legal tendency to prove that such letter was written by Church; and that the admission of the testimony, for such purpose, was error.

III. The exceptions show that " soon after the vote of December 7th, 1863, the selectmen of Bolton came to the understanding among themselves that they would pay for men to fill the quota at $300 each."

" The court instructed the jury that after the selectmen had agreed among themselves to pay $300 to each man, who should enlist to the credit of said town, to apply on this quota, if the plaintiff, having learned that defendant was paying $300 bounty, enlisted and had himself credited to said town on the faith of it, it was the same as if the town had voted $300 to each man who should enlist, and, in that case, the plaintiff could recover the three hundred dollars, less the sum which he had received."

We think this was error.

The resolution of the town, on which plaintiff relies, is not an open and general offer, which, being accepted, constitutes a contract; but such resolution delegates an authority and imposes the duty upon the selectmen to fill such quota to the best advantage of the town, and in the discharge of that duty they were required to pay any sum, in their discretion, that would secure such enlistment, not exceeding $300 to each man. What sums they would offer, what agencies they would employ, was

39

confided to their care and discretion, within the limitation stated in the resolution.

The fact that the selectmen had agreed among themselves what sums they would offer as bounty, can in no manner affect the rights of the plaintiff, unless *they* have made some offer or promise to the plaintiff. And however meritorious are the *services* of the plaintiff, the case is *naked* of any legal proof that the selectmen have made any promise, or assumed any duty, on the faith of which the plaintiff re-enlisted.

The result is that the judgment of the county court is reversed, and the cause remanded.